UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

UNITED STATES OF AMERICA             CRIMINAL NO. 3:18-CR-00085-01

VERSUS                             JUDGE TERRY A. DOUGHTY

RODERICK DOUGLAS               MAG. JUDGE KAREN L. HAYES

## MEMORANDUM RULING

Pending before the Court is Defendant Roderick Douglas' ("Douglas"), Motion for Compassionate Release [Doc. No. 190].   The Government filed a Response [Doc. No. 192] on July 20, 2020 and a Supplemental Response [Doc. No. 193] on July 29, 2020.   For the reasons set forth herein, Douglas' motion is DENIED.

## I.     Background

On January 30, 2019, Douglas plead guilty to one felony count of violating 18 U.S.C. § 371 for conspiracy to commit a violation of 18 U.S.C. § 242, which prohibits the deprivation of constitutional rights under color of law.   On June 5, 2019, Douglas was sentenced to 60 months imprisonment with 3 years of supervised release.   The guideline range for this crime was 97-121 months.   Douglas was sentenced to 60 months, the statutory cap.

Douglas appealed his conviction and sentence, and both were affirmed by the United States Court of Appeals for the Fifth Circuit on May 22, 2020.   [Doc. No. 189].

On April 6, 2020, Douglas' wife, Kasandra Douglas, filed a Motion for Compassionate Release with the Warden at Big Spring FCI.   The request was denied on May 19, 2020.

## II.     Jurisdiction

The First Step Act, 18 U.S.C. § 3852(c)(1)(A),   now allows prisoners to directly petition courts for compassionate release.   However, before filing a motion with the court, prisoners must exhaust their administrative remedies with the Bureau of Prisons ("BOP").   This requirement is jurisdictional.   *See United States v. Garcia,*   607 F.3d 209 (5th Cir. 2010).

The Government concedes that Douglas has exhausted his administrative remedies by filing an application with the Warden at Big Spring FCI on April 6, 2020.   Therefore, Douglas has exhausted his administrative remedies and this Court has jurisdiction to proceed with this motion.

Douglas' request can be construed as a request for home confinement.   Any decisions regarding prisoner designations, including release to home confinement, are reserved exclusively to the Bureau of Prisons ("BOP"), as they involve specialized determinations uniquely within expertise under 18 U.S.C. § 3621(b).   Therefore, this Court lacks jurisdiction to address that claim and the portion of Douglas' motion requesting home confinement is DENIED.

## III.     Parties Arguments

In his Motion for Compassionate Release, Douglas asks the Court to grant him a sentence reduction, or sentence to home confinement due to the COVID-19 pandemic.   He argues that his underlying health conditions put him at a greater risk of severe illness or even death if he were to contract COVID-19.   He argues his medical conditions are type 2 diabetes, hypertension, orthopedic-rheumatology, and endocrine/lipid.

The Government argues that although type 2 diabetes and hypertension are conditions that

2

"might" increase the risk of a serious COVID-19 illness, Douglas is not entitled to compassionate release.   The Government agrees that Douglas presents at least one of the risk factors identified by the CDC, namely diabetes, which heightens the risk of severe injury or death were he to contract COVID-19.   The Government agrees that this chronic condition presents a "serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" as stated in § 1B1.13, cmt. n. 1(A)(ii) in that at this time, Douglas' ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility by the chronic condition itself.

The Government further maintains that Douglas is not entitled to compassionate release as the COVID-19 outbreak is appropriately managed at the facility,   Douglas has not provided a proposed release plan, his medical conditions are appropriately managed at the facility and because he has not demonstrated that he will not pose a danger to the community if released, or that his release comports with the applicable §3553(a) factors.

## IV.    Law and Analysis

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Under 18 U.S.C. § 3582(c), a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. §

3582(c)(2).   Douglas moves to modify his sentence under 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018 only the Director of the BOP could file these kinds of compassionate release motions.   In 2018, Congress passed and President Trump signed the First Step Act, which among other actions, amended the compassionate release process.   The First Step Act, § 3852(c)(1)(A), now allows prisoners to directly petition courts for compassionate release, upon exhausting their administrative remedies.

After a prisoner exhausts his administrative remedies, a district court may reduce a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3852(c)(1)(A)(i).

## A.      Extraordinary and Compelling Circumstances

The Sentencing Commission's policy statement regarding compassionate release is consistent with the statute and provides, in pertinent part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)      extraordinary and compelling reasons warrant the reduction; .…
>
> (2)      the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)      the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

In the commentary following the policy statement, the Sentencing Commission identifies three specific reasons that are considered "extraordinary and compelling" as well as one broader

provision for reasons deemed "extraordinary and compelling":

    1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)      Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.

    (ii)    The defendant is—

      (I)  suffering from a serious physical or medical condition,

      (II)  suffering from a serious functional or cognitive impairment, or

      (III ) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)      Age of the Defendant.—The defendant

    (i)    is at least 65 years old;

    (ii)    is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)      Family Circumstances.

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only

available caregiver for the spouse or registered partner.

  (D)   <u>Other Reasons</u>.

       As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G § 1B1.13 cmt. n. 1.

  The defendant bears the burden to establish circumstances exist under which he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).   *United States v. Ennis*, EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release.") (citing *United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019)); *United States v. Wright*, Crim. Action No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (Petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute.").

  **B.**  **Analysis**

  The only "extraordinary and compelling reason" cited by Douglas is his medical condition (type 2 diabetes, hypertension, orthopedic/rheumatology and endocrine/lipid).   This Court finds that Douglas has failed to meet his burden that extraordinary and compelling reasons exist under 18 U.S.C. § 3582 (c)(1)(A) to modify his prison sentence.   The statute requires that extraordinary and compelling reasons that warrant a reduction are "consistent with applicable policy statements issued by the Sentencing Commission," and Douglas does not meet the criteria set forth in the policy statement.

### 1.      Medical Condition

In his request, Douglas maintains his medical conditions are type 2 diabetes, hypertension, orthopedic/rheumatology and endocrine/lipid. Title 18, U.S.C. § 3582(c)(1)(A) requires that extraordinary and compelling reasons that warrant a reduction are "consistent with applicable policy statements issued by the Sentencing Commission."   This Court finds that Douglas' medical issues are not consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary.   Douglas does not suffer from a terminal illness.   While he has presented some medical records, they do not prove that he is suffering from a serious physical or medical condition. Finally, he has not shown that he has a serious functional or cognitive impairment, or,   deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the…correctional facility."   *Id*. at cmt. n.1(A)(ii)(I-III).   As such, his alleged medical issues do not meet the extraordinary and compelling standard as set by the policy statement.   *See United States v. Roberts*, Crim. Action No. 15-00135-01, 2020 WL 2130999, at *3 (W.D. La. May 5, 2020) ("[Inmate's] proffered reason of hypertension fails to meet the standard for compassionate release based upon medical condition of the defendant.").

### 2.      Risk of COVID-19

Does the risk of COVID-19 change Douglas' medical assessment?   This Court finds it does not. The Government acknowledges that Douglas' type 2 diabetes is one risk factor identified by the CDC as heightening the risk of severe injury or death, were an inmate to contract COVID-19.

Big Spring FCI (where Douglas is housed), currently has 0 inmates and 6 staff members

positive for coronavirus. There have been 0 deaths. https://www.bop.gov/coronavirus (last visited 7/30/2020).

Additionally, the BOP has taken further action since the passage of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136.  Section 12003(b)(2) of the Act "expand[s] the cohort of inmates who can be considered for home release."  Pursuant to that provision of the CARES Act, on April 3, 2020, United States Attorney General William Barr issued a memorandum instructing the BOP to maximize transfer to home confinement "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations."  *See* Memorandum from Attorney General William Barr to Director of Bureau of Prisons, The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://politi.co/2UV3JBi (last visited 4/27/2020).  In the same Memorandum, Barr writes that the BOP "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities."*Id*.  The BOP is currently reviewing prisoners to determine if temporary release to home confinement or some other type of release, removal, or furlough is appropriate, under the standards issued by the CDC on which persons are at heightened risk.  The BOP has released 7,187 prisoners to home confinement under its process.  https://www.bop.gov/coronavirus (last visited 07/30/2020).

Courts have consistently held that "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence…." *United States v. Clark*, Crim. Action No. 17-85-SDD-RLB, 2020 WL 1557397, at *6 (M.D. La. April 1, 2020).  *See also United States v. Raia*, 954 F3d 594, 597 (3d Cir. 2020) (holding that the

spread of COVID-19 alone "cannot independently justify compassionate release, especially considering the BOP's role, and its extensive and professional efforts to curtail the virus's spread"); *Mazur,* Crim. Action No. 18-68 at *1, 3-4 (holding that extraordinary and compelling reasons to grant compassionate release were not present for a prisoner diagnosed with myeloid leukemia and hypertension despite twenty-five percent of the inmate population testing positive for COVID-19).   Therefore, the Court finds that the Defendant has failed to meet his burden that the conditions at Big Spring FCI and the potential exposure to COVID-19 present extraordinary and compelling circumstances according to 18 U.S.C. § 3582 (c)(1)(A).

Even if Douglas provided complete medical documentation to show that he has a serious physical or medical condition that makes him at heightened risk, his likelihood of exposure has been greatly reduced because of the low number of cases at Big Spring FCI and the actions taken by BOP to address COVID-19 concerns.   At this point, Douglas has only "general concerns" about possible exposure to COVID-19, and he is not entitled to compassionate release for this reason alone.

C.        **Danger to the community and § 3553(a) factors**

Even if Douglas were to meet his burden based on his medical condition, the Court must still consider whether he remains a danger to the community. The Court must consider whether a prisoner remains a danger to the community before granting compassionate release,   as required by U.S.S.G. § 1B1.12(2), which refers to 18 U.S.C. § 3142(g).   Furthermore, 18 U.S.C. § 3582 and the policy statement require the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a).

Section 3142(g) sets out the factors courts must consider in deciding whether to release a

9

defendant pending trial. The factors weighing a petitioner's danger to the community include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, ... community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Similarly, § 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

    (1)     the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

    (2)     the need for the sentence imposed –

        A.     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        B.     to afford adequate deterrence to criminal conduct; [and]

        C.     to protect the public from further crimes of   the defendant; …

Douglas had no criminal history points and received the lowest criminal history category of I. This is Douglas' first criminal conviction. This Court does not believe he would be a danger to society if released. However, in evaluating the § 3553(a) factors, this Court does not believe that Douglas is entitled to compassionate release. The Court also has to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment of the offense. The Court is also to consider whether the sentence affords adequate deterrence to criminal conduct.

Although this Court does not believe that Douglas would be a danger to society if released, re-sentencing Douglas to "time served", which would be 12 months (or 20%) of a 60-month sentence, would not reflect the seriousness of the offense, would not promote respect for the law, would not provide just punishment for the offense, and would not afford adequate deterrence to criminal conduct.

Douglas' crime was serious.   Douglas received the statutory maximum of 60 months, however the guideline range for the offense was 97-121 months.

Considering the 18 U.S.C. § 3553(a) factors, along with the factors in 18 U.S.C. § 3142(g), Douglas is not entitled to compassionate release.   His Motion for Compassionate Release based on COVID-19 is DENIED.

## V.      Conclusion

For the above reasons, Roderick Douglas' Motion for Compassionate Release [Doc. No. 190] is DENIED.

To the extent Roderick Douglas requested home confinement that request is DENIED for lack of jurisdiction.

MONROE, LOUISIANA, this 30th day of July, 2020.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

11